IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 11 |
| GULFSTREAM DIAGNOSTICS, LLC, | § | |
| | § | Case No. 19-30159-sgj11 |
| Debtor. | § | |
| | § | |

## PLAN OF LIQUIDATION FOR GULFSTREAM DIAGNOSTICS, LLC

Davor Rukavina, Esq.
Texas Bar No. 24030781
Thomas D. Berghman, Esq.
Texas Bar No. 24082683
**MUNSCH HARDT KOPF & HARR, P.C.**
3800 Ross Tower
500 N. Akard Street
Dallas, Texas  75202-2790
Telephone: (214) 855-7500
Facsimile: (214) 978-4375

**ATTORNEYS FOR DEBTOR-IN-POSSESSION**

**DATED: June 17, 2019.**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 11 |
| GULFSTREAM DIAGNOSTICS, LLC, | § | |
| | § | Case No. 19-30159-sgj11 |
| Debtor. | § | |
| | § | |

## PLAN OF LIQUIDATION FOR GULFSTREAM DIAGNOSTICS, LLC

The Plan Proponent hereby proposes the following *Plan of Liquidation for Gulfstream Diagnostics, LLC* pursuant to the provisions of section 1121 of the Bankruptcy Code:

## ARTICLE I
## DEFINITIONS AND INTERPRETATION

1.1     Rules of Interpretation.

(i)     Unless otherwise specified, all Section, Article, and Exhibit references in this Plan are to the respective Section in, or Article of, this Plan, as the same may be amended, waived or modified from time to time.  Words denoting the singular number shall include the plural number and *vice versa*.  In construing this Plan, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply.

(ii)    In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006 shall apply.

(iii)   Where a creditor or holder of any right under this Plan is named by name, such naming shall include any successor-in-interest to any right of such creditor.

1.2     Definitions.  Terms and phrases, whether capitalized or not, that are used and not defined in this Plan, but that are defined in the Bankruptcy Code, have the meanings ascribed to them in the Bankruptcy Code.  Unless otherwise provided in this Plan, the following terms have the respective meanings set forth below, and such meanings shall be equally applicable to the singular and plural forms of the terms defined, unless the context otherwise requires.

"**Administrative Claim**" means a Claim for any cost or expense of administration of the Bankruptcy Case under section 503(b) of the Bankruptcy Code, including, without limitation, any fees or charges assessed against the Estate pursuant to 28 U.S.C. § 1930, and further including a Professional Claim.  For the avoidance of doubt, Administrative Claims do not include Secured Tax Claims.

"**Administrative Claims Bar Date**" means the day that is thirty (30) days after the Effective Date.

"**Administrative Tax Claim**" means any *ad valorem* tax claim assessed against, or payable by, the Debtor or the Estate or their property for or on account of tax year 2020 or thereafter, specifically excluding Secured Tax Claims.

"**AIT Claims**" mean any and all claims against American Institute of Toxicology, Inc., including arising from that certain *Asset Purchase and Transition Services Agreement* dated January 2019.

"**Allowed**" as it relates to any type of Claim or Administrative Claim provided for under this Plan, means a Claim: (i) which has been scheduled as undisputed, noncontingent and liquidated in the Schedules in an amount other than zero or unknown, and as to which: (a) no proof of Claim has been timely filed, and (b) no objection has been timely filed (as determined by applicable deadlines contained in this Plan, including the Claims Objection Deadline); (ii) as to which a proof of Claim has been timely filed and either: (a) no objection thereto has been timely filed (as determined by applicable deadlines contained in this Plan, including the Claims Objection Deadline), or (b) such Claim has been allowed (but only to the extent allowed) by a Final Order of the Bankruptcy Court; (iii) which has been expressly allowed under the provisions of this Plan; or (iv) which has been expressly allowed by Final Order of the Bankruptcy Court.

"**Allowed Administrative Claim**" means: (i) an Administrative Claim that has been Allowed (but only to the extent Allowed), if approval from the Bankruptcy Court is required in order to Allow the same; and (ii) an Administrative Claim which: (a) is incurred by the Debtor after the Petition Date in the ordinary course of business operations or pursuant to an order entered by the Bankruptcy Court granting automatic Administrative Claim status; (b) is not disputed by the Debtor or the Liquidation Trustee; and (c) does not require approval from the Bankruptcy Court to become Allowed.

"**Allowed Priority Claim**" means a Priority Claim that has been Allowed (but only to the extent Allowed).

"**Allowed Secured Claim**" means a Secured Claim that has been Allowed (but only to the extent Allowed).

"**Allowed Unsecured Claim**" means an Unsecured Claim that has been Allowed (but only to the extent Allowed).

"**Avoidance Actions**" means any and all rights, claims or actions which the Liquidating Trust or the Debtor may assert on behalf of the Estate under Chapter 5 of the Bankruptcy Code, including actions under one or more provisions of sections 328, 542, 544, 545, 546, 547, 548, 549, 550, 551 and/or 553 of the Bankruptcy Code.

"**Ballot**" means the ballot, the form of which has been approved by the Bankruptcy Court, accompanying the Disclosure Statement provided to each holder of a Claim entitled to vote to accept or reject this Plan.

"**<u>Bankruptcy Case</u>**" means Bankruptcy Case No. 19-30159 in the Bankruptcy Court.

"**<u>Bankruptcy Code</u>**" means 11 U.S.C. §§ 101, *et. seq.*, in effect as of the Petition Date and as may have been or may be amended or supplemented since, to the extent that any such amendment or supplement is automatically applicable to the Bankruptcy Case by operation of law and not by operation of any election or choice.

"**<u>Bankruptcy Court</u>**" means the United States Bankruptcy Court for the Northern District of Texas, Dallas Division or, if such court ceases to exercise jurisdiction, the court or adjunct thereof that exercises jurisdiction over the Bankruptcy Case.

"**<u>Bankruptcy Rules</u>**" means the Federal Rules of Bankruptcy Procedure, together with the local bankruptcy rules for the Bankruptcy Court as now in effect or as the same may from time to time hereafter be amended.

"**<u>Bar Date</u>**" means May 20, 2019 for claims of persons other than Governmental Units, and July 15, 2019 for claims of Governmental Units.

"**<u>BCBS Claims</u>**" means any and all claims held by the Subsidiaries, the Debtor, and the Estate against Blue Cross/Blue Shield, including claims against Blue Cross Blue Shield Association and all of its affiliated health insurance companies and organizations for the failure of the same to reimburse the Debtor for services and tests performed, and instead issuing said reimbursements to the underlying patient directly, and the BCBS Claims also include the claims of the Subsidiaries, the Debtor, and the Estate against those patients receiving money from BCBS and failed to turn the same over to the Debtor, the Subsidiaries, or the Estate.

"**<u>BoA</u>**" means Bank of America, National Association.

"**<u>BoA Collateral</u>**" means all property of the Debtor and the Estate subject to BoA's liens as of the Effective Date, and includes, if applicable, the proceeds of any such collateral, whether cash or otherwise.

"**<u>Business Day</u>**" means any day which is not a Saturday, a Sunday, or a "legal holiday" within the meaning of Bankruptcy Rule 9006(a).

"**<u>Claim</u>**" means a claim against the Debtor, the Estate, and/or property of the Debtor or the Estate, as such term is otherwise defined in section 101(5) of the Bankruptcy Code, and arising at any time prior to the Effective Date, including first arising after the Petition Date, regardless of whether the same would otherwise be a claim under said section 101(5) of the Bankruptcy Code.

"**<u>Claims Objection Deadline</u>**" means the date by which parties authorized by the Plan may file any objection to a Claim, which date shall be one hundred and twenty (120) days after the Effective Date, except with respect to Administrative Claims as otherwise provided for herein and with respect to Disputed Claims.

"**<u>Class</u>**" means one of the categories of Claims and Equity Interests established under Article II of this Plan.

"**Confirmation Date**" means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on its docket.

"**Confirmation Hearing**" means the hearing(s) before the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider confirmation of this Plan, as such hearing(s) may be continued, rescheduled or delayed.

"**Confirmation Order**" means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code, as such order may be amended, modified, or supplemented.

"**Creditor**" means the holder of any Claim entitled to distributions under this Plan with respect to such Claim.

"**Debtor**" means Gulfstream Diagnostics, LLC, a Texas limited liability company.

"**Disallowed Claim**" means, as it relates to any type of Claim provided for under this Plan, a Claim or portion thereof that: (i) has been disallowed by a Final Order of the Bankruptcy Court; (ii) is identified in the Schedules in an amount of zero dollars, unknown dollars, or as contingent, unliquidated, and/or disputed, and as to which a proof of Claim was not filed by the Bar Date; or (iii) is not identified in the Schedules and as to which no proof of Claim has been filed or deemed filed by the Bar Date, if the filing of such proof of Claim is otherwise required.

"**Disclosure Statement**" means the Disclosure Statement with respect to this Plan, approved by the Bankruptcy Court as containing adequate information for the purpose of dissemination and solicitation of votes on confirmation of this Plan, either in its present form or as it may be altered, amended or modified from time to time.

"**Disputed Claim**" means any Claim or any portion thereof which is neither Allowed nor is a Disallowed Claim as of the close of the Claims Objection Deadline. In the event that any part of a Claim is a Disputed Claim, such Claim in its entirety shall be deemed to constitute a Disputed Claim for purposes of distribution under this Plan unless Liquidating Trustee, the objecting party, and the holder thereof agree otherwise or unless otherwise ordered by the Bankruptcy Court; *provided*, *however*, that nothing in this definition of "Disputed Claim" is intended to or does impair the rights of any holder of a Disputed Claim to pursue its rights under section 502(c) of the Bankruptcy Code. Without limiting any of the foregoing, but subject to the provisions of this Plan, a Claim that is the subject of a pending application, motion, complaint, objection, or any other legal proceeding seeking to disallow, limit, subordinate, or estimate such Claim, as of the Claims Objection Deadline, shall be a Disputed Claim unless and until the entry of a Final Order providing otherwise.

"**Effective Date**" means the first Business Day fourteen (14) days after the Confirmation Date if the Confirmation Order is not stayed or, if the Confirmation Order is stayed, the first Business Day following the lifting, dissolution, or removal of such stay which is at least fourteen (14) days after the Confirmation Date, and upon which the conditions to the effectiveness of the Plan set forth in Article X hereof are satisfied.

"**Equity Interests**" means any ownership of any equity in the Debtor, including, as may be applicable, any membership interest, stock, share, general partnership interest, limited partnership interest, or other equity ownership.

"**Estate**" means the estate created for the Debtor pursuant to section 541 of the Bankruptcy Code and any other applicable provision thereof.

"**EverlyWell Claims**" means any claim against EverlyWell, Inc., including for an allocation and reimbursement for *ad valorem* taxes in connection with the prepetition sale of assets to EverlyWell.

"**Executory Contract**" means, collectively, "executory contracts" and "unexpired leases" of the Debtor as of the Petition Date as such terms are used within section 365 of the Bankruptcy Code.

"**Final Decree**" means the final decree entered by the Bankruptcy Court on or after the Effective Date pursuant to Bankruptcy Rule 3022.

"**Final Order**" means a judgment, order, ruling, or other decree issued and entered by the Bankruptcy Court or by any state or other federal court or other tribunal having jurisdiction over the subject matter thereof which judgment, order, ruling, or other decree has not been reversed, stayed, modified, or amended and as to which: (i) the time to appeal or petition for review, rehearing or certiorari has expired and as to which no appeal or petition for review, rehearing or certiorari is pending; or (ii) any appeal or petition for review, rehearing or certiorari has been finally decided and no further appeal or petition for review, rehearing or certiorari can be taken or granted.

"**Governmental Unit**" means a governmental unit as such term is defined in section 101(27) of the Bankruptcy Code.

"**Intercompany Claims**" means the claims of the Debtor against the Subsidiaries, more particularly set forth in Exhibit "A" to the Plan.

"**Liquidating Trust Documentation**" means the trust declaration or similar document executed to govern the Liquidating Trust created pursuant to Article V of the Plan and governed by Articles V and VI of the Plan, to be submitted as a supplement to the Plan.

"**Litigation Claims**" means all rights and interests of the Debtor and the Estate in and to: (i) the Avoidance Actions; (ii) the BCBS Claims; (iii) the AIT Claims; and (iv) the EverlyWell Claims.

"**Person**" means and includes natural persons, corporations, limited partnerships, general partnerships, joint ventures, trusts, land trusts, business trusts, unincorporated organizations, or other legal entities, irrespective of whether they are governments, agencies or political subdivisions thereof.

"**Petition Date**" means January 16, 2019.

"**Plan**" means this *Plan of Liquidation for Gulfstream Diagnostics, LLC.*, either in its present form or as it may be altered, amended or modified from time to time.

"**Plan Proponent**" means the Debtor.

"**Priority Claim**" means any Claim entitled to priority in payment under section 507(a) of the Bankruptcy Code, excluding any Claim that is an Administrative Claim or that is a Secured Tax Claim.

"**Professional**" means any Person employed or to be compensated pursuant to sections 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code.

"**Professional Claim**" means a Claim by a Professional for compensation and/or reimbursement of expenses pursuant to sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code in connection with an application made to the Bankruptcy Court in the Bankruptcy Case.

"**Rejection Claim**" means a Claim arising under section 502(g) of the Bankruptcy Code as a consequence of the rejection of any Executory Contract.

"**Schedules**" means the Schedules of Assets and Liabilities and the Statements of Financial Affairs filed by the Debtor with the clerk of the Bankruptcy Court pursuant to Bankruptcy Rule 1007, as they have been or may be amended or supplemented from time to time in accordance with Bankruptcy Rule 1009.

"**Secured Claim**" means a Claim that is alleged to be secured, in whole or in part, (i) by a lien against an asset of the Debtor or the Estate to the extent such lien is valid, perfected and enforceable under applicable non-bankruptcy law and is not subject to avoidance or subordination under the Bankruptcy Code or applicable non-bankruptcy law, but only to the extent that such Claim is secured within the meaning of section 506(a) of the Bankruptcy Code; or (ii) as a result of rights of setoff under section 553 of the Bankruptcy Code.

"**Secured Tax Claim**" means a Claim of a Governmental Unit for the payment of *ad valorem* business personal property taxes that is secured by property of the Debtor or the Estate, including any such tax for tax year 2019.

"**Subsidiaries**" means Gulf Toxicology, LLC ("GTOX"), Atlantic Laboratories, LLC ("ATL"), Reference Health Laboratories, LLC ("RHL"), and Gulfstream Genomics, LLC ("GG").

"**Subsidiary Assets**" means the transferrable assets of Gulf Toxicology, LLC, Atlantic Laboratories, LLC, Reference Health Laboratories, LLC, and Gulfstream Genomics, LLC. For the avoidance of doubt, subsidiary assets does not include the laboratory certificates and licenses of these entities, as these are not transferrable pursuant to Federal Law unless to an operating diagnostic laboratory.

"**Substantial Consummation**" means the date on which any of the following first happens: (i) the Bankruptcy Court enters an order on the fee application of the Debtor's

general counsel; (ii) the Liquidating Trust Documentation is executed; or (iii) the Bankruptcy Court otherwise finds that substantial consummation within the meaning and operation of the Bankruptcy Code has occurred.

"**Unsecured Claim**" means any alleged Claim against the Debtor that is not secured by a valid, enforceable, and unavoidable lien against any asset of the Debtor or the Estate, but excluding any Administrative Claim, Priority Claim, Secured Claim, but including a Secured Claim to the extent not an Allowed Secured Claim but otherwise an Allowed Claim.

"**Voting Deadline**" means the period established by the Bankruptcy Court within which Ballots may be cast on the Plan.


## ARTICLE II.
## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

2.1    Classification Generally.  All Claims and Equity Interests, except Administrative Claims, are placed in Classes under the Plan.  A Claim is classified within a particular Class only to the extent that the Claim qualifies under the description of that Class.  A Claim which is properly includible in more than one Class is only entitled to inclusion within a particular Class to the extent that it qualifies under the description of such Class, and shall be included within a different Class(es) to the extent that it qualifies under the description of such different Class(es).

2.2    Unclassified Claims.  The following types of Claims are not classified under the Plan:

Administrative Claims

Administrative Tax Claims

2.3    Classified Claims and Interests.  Claims and Equity Interests are classified under this Plan as follows:

Class 1:       Priority Claims

Class 2:       Secured Tax Claims

Class 3:       BoA Secured Claim

Class 4:       Other Secured Claims

Class 5:       General Unsecured Claims

Class 6:       Equity Interests

**ARTICLE III.**
**PROVISIONS FOR THE TREATMENT OF UNCLASSIFIED CLAIMS**

3.1 <u>Administrative Claim Applications and Deadline</u>. Holders of Administrative Claims, including Professional Claims, other than: (a) Allowed Administrative Claims as of the Effective Date; (b) Administrative Claims that represent liabilities incurred on or after the Petition Date, but prior to the Effective Date, in the ordinary course of the Debtor's business which may be paid in the ordinary course of the Debtor's business without order of the Bankruptcy Court; and (c) Administrative Claims that constitute fees or charges assessed against the Estate under Chapter 123, Title 28, United States Code, must by no later than the Administrative Claims Bar Date: (x) file an application with the Bankruptcy Court for allowance of the Administrative Claim; and (y) serve a copy of such application on the Debtor, the Liquidating Trustee, the United States Trustee, and all other parties otherwise entitled to notice thereof. Failure to file and serve such application by the Administrative Claims Bar Date shall result in the Administrative Claim being forever barred and discharged as against the Debtor, the Estate, the Liquidating Trust, and the property of any of the foregoing. Except as specifically provided in this Plan, nothing in this Plan alters the law applicable to, and governing, the allowance of Administrative Claims (including Professional Claims) under the Bankruptcy Code.

3.2 <u>Treatment of Allowed Administrative Claims</u>. Except with respect to Administrative Tax Claims (see Section 3.4 below), and unless previously paid, each holder of an Allowed Administrative Claim, including a Professional Claim, shall receive in full satisfaction, release and discharge of, and in exchange for such Allowed Administrative Claim, from the Liquidating Trust: (i) the amount of such Allowed Administrative Claim, in cash, and without interest, attorney's fees (except as Allowed by the Bankruptcy Court), or costs, on the earlier of: (a) ten (10) Business Days after the Effective Date; or (b) the date that is ten (10) Business Days after such Administrative Claim becomes an Allowed Administrative Claim; or (ii) such other treatment as may be agreed upon in writing by the holder of such Claim and the Liquidating Trust; *provided*, *however*, that Allowed Administrative Claims that represent liabilities incurred on or after the Petition Date, but prior to the Effective Date, in the ordinary course of the Debtor's businesses which may be paid in the ordinary course of the Debtor's businesses without order of the Bankruptcy Court, shall be paid by the Debtor and/or the Liquidating Trust, as appropriate, in accordance with the agreements related thereto, and subject to the Debtor's and/or the Liquidating Trust's, as appropriate, right to contest the allowance or payment of same.

3.3 <u>Treatment of Professional Claims</u>. Professional Claims become Allowed the same as Administrative Claims in this Article (Section 3.1), and are treated the same as Administrative Claims in this Article (Section 3.2), except that: (i) a Professional Claim that has been previously Allowed on a final (not interim) basis by Final Order of the Bankruptcy Court is not subject to the requirement for filing an application as provided for in Section 3.1; (ii) a Professional Claim that has been Allowed on an interim basis (not final) in whole or in part shall, with respect to being Allowed on a final basis, be subject to the filing of an application for its allowance as provided for in Section 3.1 and shall be subject to such law, rules, and procedures as would be otherwise applicable to the same outside of this Plan; (iii) a Professional Claim that has been previously Allowed and paid on a final basis by Final Order of the Bankruptcy Court, but subject to disgorgement in the event of administrative insolvency, shall cease being subject to said disgorgement ten (10) days after the Administrative Claims Bar Date unless, upon motion

and notice, the Bankruptcy Court extends such period; (iv) any interim payments on account of a Professional Claim shall be credited against the payment of the final Allowed amount of such Professional Claim; (v) any retainer provided on account of a Professional Claim may be credited and applied against the payment of the final Allowed amount of such Professional Claim once such Professional Claim is Allowed on a final basis; and (vi) any Professional Claim based on payment under section 328 of the Bankruptcy Code by commission or contingency shall be allowed and paid as provided for in the retention order of the Bankruptcy Code, without need for the filing of any application or other document with the Bankruptcy Court notwithstanding anything contained herein to the contrary.

3.4     <u>Administrative Tax Claims</u>.   Administrative Tax Claims, and any liens securing the same, are not affected by, prejudiced by, discharged by, or treated by this Plan, and shall survive this Plan without need for any action on the part of the holder thereof.   Administrative Tax Claims, and the liens securing the same, shall be paid from the Liquidating Trust when and as otherwise appropriate, together with such interest and other charges as otherwise appropriate. Notwithstanding anything contained in this Plan to the contrary, nothing in this Plan transfers or vests any property of the Debtor or the Estate free and clear of any lien securing an Administrative Tax Claim.   The Debtor and the Estate reserve any and all rights to contest any Administrative Tax Claims as may be otherwise appropriate, and nothing in this Plan Allows any Administrative Tax Claim, with all such rights transferred to the Liquidating Trust as of the Effective Date.

3.5     <u>Section 505</u>.   For the avoidance of doubt, and without limiting the generality of any similar provision of this Plan, the Debtor and the Estate reserve all rights under section 505 of the Bankruptcy Code, as otherwise applicable, to contest any tax Claim and to seek appropriate determinations under said section 505 with respect thereto, all of which rights are transferred under this Plan to the Liquidating Trust.

**ARTICLE IV.**
**PROVISIONS FOR THE TREATMENT OF CLASSIFIED CLAIMS;**
**IDENTIFICATION OF IMPAIRED CLASSES**

4.1     Class 1:  Priority Claims.

    4.1.1   Treatment.  Each Priority Claim, to the extent Allowed, shall be paid in full satisfaction, release and discharge of and in exchange for such Allowed Priority Claim, by the Liquidating Trustee from the Liquidating Trust: (i) the amount of such Allowed Priority Claim, in cash, and without interest, attorney's fees, or costs, no later than one year after the Effective Date; or (ii) such other treatment as may be agreed upon in writing by the holder of such Claim and the Liquidating Trustee.

    4.1.2   Impairment.  Class 1 is not impaired under this Plan.

4.2     Class 2:  Secured Tax Claims.

    4.2.1   Retention of Liens.  Each holder of a Secured Tax Claim shall retain all liens securing the same, which liens shall survive confirmation of this Plan with the same priority, extent, and validity that otherwise exists.

    4.2.2.  Treatment.  Each Secured Tax Claim, to the extent Allowed, shall be paid in full satisfaction, release and discharge of, and in exchange for, such Allowed Secured Tax Claim and any lien securing the same, by the Liquidating Trustee from the Liquidating Trust as follows:

        (i)     Interest.  Prior to the payment in full of an Allowed Secured Tax Claim as above, each Allowed Secured Tax Claim shall accrue interest at the applicable rate as specified by non-bankruptcy law.

        (ii)    Payment for Business Personal Property Tax.  The Liquidating Trustee shall pay each Secured Tax Claim, to the extent Allowed, when based on business personal property taxation, together with all interest accruing after the Petition Date and after the Effective Date, no later than ten (10) Business Days after the same becomes due, or no later than ten (10) Business Days after the execution of an agreement compromising the same.

    4.2.3   Impairment.  Class 2 is not impaired under this Plan.

4.3    Class 3: Bank of America Secured Claim.

4.3.1.   Identification of Class and Allowance.  BoA is hereby Allowed a Secured Claim secured by the BoA Collateral (the "BoA Secured Claim").  The amount of the BoA Secured Claim is unliquidated but shall be whatever amount is realized on the BoA Collateral by the Debtor or the Liquidating Trust, subject to deductions and reductions as provided for in this Plan.  For the avoidance of doubt, BoA has an Allowed Unsecured Claim based on any deficiency claim with respect to the BoA Secured Claim.

4.3.2   Allowance and Preservation of Liens.  BoA has a first priority, valid, unavoidable, and perfected lien and security interest in, to, and against the BoA Collateral, subject only to superior *ad valorem* property taxes.  Notwithstanding anything contained herein to the contrary, the transfer of any property that is BoA Collateral to the Liquidating Trust under this Plan shall not be clear and free of, and shall remain subject to, all liens and security interest of BoA in, to, and against the same.

4.3.4   Treatment.  In full and final satisfaction, release, and discharge of the BoA Secured Claim, including any lien and security interest securing the same, the BoA Collateral remaining as of the Effective Date shall be transferred to the Liquidating Trust as otherwise provided for in this Plan, to be liquidated by the Liquidating Trust as otherwise provided for in this Plan and paid to BoA.

4.3.5   Rights Against Guarantors.  Nothing in this Plan prejudices, affects, limits, or releases any claim or right of BoA against any person related to any guarantee of any obligation of the Debtor to BoA.

4.3.6   Release.  Any and all claims and causes of action against BoA, except for potential surcharge claims, are released automatically and without need for further document, order, or instrument as of the Effective Date.

4.3.7   Impairment.  Class 3 is impaired under this Plan.

4.4    Class 4:  Other Secured Claims.

4.4.1   Identification of Class.  Class 4 consists of all Secured Claims, including underlying claims, liens, interests, encumbrances, and rights against the Debtor, the Estate, and their property, which are otherwise not specifically classified by this Plan. For the avoidance of doubt, Class 4 excludes Secured Tax Claims, Administrative Tax Claims, and the BoA Secured Claim.

4.4.2   Allowance of Claims.   Class 4 Secured Claims shall be subject to becoming Allowed as otherwise provided for in this Plan, and nothing in this Plan alters, affects, or prejudices any right, claim, issue, or defense with respect thereto.

4.4.3   Treatment.  No Class 4 Secured Claim shall be paid by the Liquidating Trust or from the assets of the Liquidating Trust.  As of the Effective Date, any property securing a Class 4 Secured Claim, when no specifically classified creditor also has a lien or security interest against the collateral securing the same, is abandoned to the holder of

such Class 4 Secured Claim, and nothing in this Plan prejudices, limits, or impairs the ability of such holder to exercise any and all rights and remedies with respect to the same.

4.4.4 <u>Deficiency Claim</u>. Nothing in this Plan prejudices, alters, or impairs the ability of a holder of a Class 4 Secured Claim to also assert an Unsecured Claim for any deficiency claim, subject to all applicable requirements for the timely assertion thereof and the allowance thereof.

4.4.5 <u>Impairment</u>. Class 4 is not impaired under this Plan.

4.5 <u>Class 5: General Unsecured Claims</u>. Class 5 claims consists of Unsecured Claims, including Rejection Claims and deficiency claims, and are subject to Allowance as otherwise provided for in this Plan and all applicable law unless specifically and explicitly Allowed in this Plan. In full and final satisfaction, discharge, and release of each Class 5 Claim, as Allowed, each Allowed Class 5 Claim shall be paid pro-rata by the Liquidating Trustee under the provisions of Article VI of this Plan. To the extent the Liquidating Trust has any property remaining after payment in full of all higher priority claims, including Secured Tax Claims and the BoA Secured Claim, the Liquidating Trustee shall make distributions to Allowed Class 5 claims pro-rata from the same. Class 5 is impaired under this Plan.

4.6 <u>Class 6: Equity Interests</u>. Automatically on the Effective Date, and without need for further order, document, action, or instrument, all Equity Interests in the Debtor and the Estate are cancelled, and shall receive no payment or distribution under this Plan. Class 6 is impaired under this Plan.

## ARTICLE V.
## MEANS FOR IMPLEMENTATION OF THE PLAN

5.1 <u>Liquidating Trust</u>. The Liquidating Trust is hereby created. The Liquidating Trust shall be governed by Article VI of this Plan.

5.2. <u>Transfer of Property</u>. Automatically on the Effective Date, and without need for further order, document, action, or instrument, all transferrable property of the Debtor and the Estate (the "<u>Liquidating Trust Property</u>") is transferred to the Liquidating Trust free and clear of all claims, liens, interests, and encumbrances, except for such claims, liens, interests, and encumbrances that are specifically and explicitly preserved by or created under this Plan, which claims, liens, interests and encumbrances remain attached to any property transferred to the Liquidating Trust with the same validity, extent, and priority as otherwise exists and as provided for in this Plan. For the avoidance of doubt, the Liquidating Trust Property includes the BoA Collateral and the Litigation Claims.

5.3. <u>Settlement of Intercompany Claims</u>. Automatically on the Effective Date, and without need for further order, document, action, or instrument, the Subsidiaries hereby assign and transfer, unconditionally and indefeasibly, all of the transferrable Subsidiary Assets to the Liquidating Trustee. For, and in exchange and consideration of, the Subsidiary Assets, the Intercompany Claims shall be fully and finally released and compromised as of the Effective Date without further need for documentation or agreement. This provision constitutes a

compromise pursuant to Bankruptcy Rule 9019. The Plan shall be supplemented with acceptable transfer and settlement documentation. For the avoidance of doubt, liens on the Subsidiary Assets, if any, shall continue to attach to the Subsidiary Assets to the same priority and extent. A non-exclusive schedule of the Subsidiary Assets is attached hereto as Schedule "B".

5.4.    <u>Attachment of Claims</u>.  All Claims against the Debtor and the Estate, as Allowed, shall attach against the Liquidating Trust automatically on the Effective Date without need for further order, document, action, or instrument, with the same validity, extent, and priority as otherwise exists, but subject to all requirements applicable to the same under this Plan.

5.5.    <u>No Transfer Tax</u>.  None of the transfers provided for in this Plan, including the transfer of property to the Liquidating Trust, shall subject the Debtor, the Estate, or the Liquidating Trust to any transfer, sale, bulk sale, or stamp tax.

5.6    <u>BoA Collateral</u>.  The Liquidating Trust shall liquidate the BoA Collateral and shall pay the proceeds thereof, after payment of the Liquidating Trust's reasonable fees and expenses, to BoA from time and time and reasonably promptly after the liquidating of the same. BoA may challenge the reasonableness of the Liquidating Trust's fees and expenses via motion in the Bankruptcy Case.  The Liquidating Trustee shall provide reasonable, non-privileged information to BoA regarding the same, and shall account to BoA for the same, upon reasonable request for such information or accounting from BoA.

5.7    <u>Surcharge Rights</u>.  Notwithstanding anything to the contrary in this Plan, including any release provided for in this Plan, all claims and rights of the Debtor, the Estate, and the Liquidating Trust to surcharge any secured creditor, secured claim, or collateral, including with respect to the BoA Collateral, are preserved and are transferred to the Liquidating Trust under this Plan.  Any surcharge claim arising after the Effective Date shall be determined pursuant to the provisions of, and law applying, section 506(c) of the Bankruptcy Code, regardless of whether such section would otherwise apply after the confirmation of a plan.

5.8    <u>Incorporation of Rule 9019</u>.  To the extent necessary to effectuate and implement the compromises and releases contained in this Plan, the Plan shall be deemed to constitute a motion under Bankruptcy Rule 9019 seeking the Bankruptcy Court's approval of all of the compromises and releases contained herein.

5.9    <u>Rights Under Section 505</u>.  All Claims for taxes by Governmental Units and any claim to a refund regarding the same or other relief regarding the same shall remain subject to section 505 of the Bankruptcy Code, and are transferred to the Liquidating Trust.  The Liquidating Trust may seek relief pursuant to section 505 of the Bankruptcy Code as a part of, and in conjunction with, any objection to any claim for taxes by a Governmental Unit.

5.10    <u>Automatic Stay</u>.  The automatic stay provided by section 362(a) of the Bankruptcy Code shall remain in effect through to the Effective Date, unless otherwise specifically modified, annulled, or terminated by the Bankruptcy Court pursuant to separate order, and shall terminate on the Effective Date, at which time the discharge and injunction provisions of this Plan and the Bankruptcy Code shall take control.

5.11    Incorporation of Exhibits. Any exhibits to this Plan, or any supplements to this Plan filed prior to the conclusion of the Confirmation Hearing, shall automatically become part of this Plan if it is intended to address any issue in this Plan and if it is intended to become a part of this Plan.

5.12    Rejection of Executory Contracts. Unless rejected pursuant to separate order in the Bankruptcy Case, all Executory Contracts of the Debtor and the Estate are rejected automatically on the Effective Date, without need for further order, action, document, or instrument.

5.13    Prosecution of Litigation. After the Effective Date, and upon the Liquidating Trustee's reasonable business judgment, the Liquidating Trust shall prosecute any and all claims Litigation Claims. The Liquidating Trust may hire such counsel, advisor, expert witness, and the like, as otherwise provided for in Article VI of this Plan.

## ARTICLE VI
## THE LIQUIDATING TRUST AND LIQUIDATING TRUST ADVISORY BOARD

6.1    Name. The name of the Liquidating Trust shall be "*Gulfstream Diagnostics, LLC Creditors Trust*".

6.2    Tax Treatment of Liquidating Trust. The Liquidating Trust shall be considered a "grantor" trust for federal income tax purposes and, therefore, shall not have any separate liability for federal income taxes relating to, or arising from, the conveyance, operation or liquidation of the Liquidating Trust Property. To the extent required by law, however, the Liquidating Trustee will file all income tax returns for the Liquidating Trust.

6.3    Liquidating Trustee.

(i)    Control and Management. The Liquidating Trust shall be under the sole control and management of the "Liquidating Trustee."

(ii)    Identity. The Liquidating Trustee shall be _____. If the same is unwilling or unable to serve as the Liquidating Trustee, the Debtor and BoA shall confer and agree on a suitable Liquidating Trustee. In the event no agreement on the identity of the Liquidating Trustee is reached within seven (7) days of the settling of the Liquidating Trust, the Debtor and BoA shall each nominate two (2) persons for the position of Liquidating Trustee and a name shall be drawn out of a hat. In the event the person whose name is drawn is unwilling or unable to serve as the Liquidating Trustee, the name-drawing process will be repeated until the name of a person willing and able to serve as Liquidating Trustee is drawn.

(iii)    Replacement. In the event of disability, death, resignation, or other removal of the Liquidating Trustee, the Trust Advisory Board (defined below) shall, by majority vote, elect the new Liquidating Trustee.

(iv)    Removal of Liquidating Trustee. The Trust Advisory Board, after notice to the Liquidating Trustee and opportunity to be heard, may by unanimous vote remove

the Liquidating Trustee. Otherwise, the Liquidating Trustee may be removed only pursuant to order of the Bankruptcy Court or other court of competent jurisdiction.

(v) <u>Fiduciary</u>. The Liquidating Trustee shall owe such fiduciary duties and responsibilities to the Liquidating Trust and its beneficiaries as are otherwise appropriate under common law, except to the extent modified in this Plan.

6.4 <u>Beneficiaries of Liquidating Trust</u>. Each Creditor with an Allowed Claim payable by the Liquidating Trust shall be a beneficiary of the Liquidating Trust.

6.5 <u>Duties of Liquidating Trustee</u>. The sole purpose, and the sole duty, of the Liquidating Trust is to administer its assets for the benefit of holders of Allowed Claims that attach to the Liquidating Trust under this Plan by reasonably maximizing the value and recovery of said assets and by providing distributions, if any, to the Creditors entitled to distributions from the Liquidating Trust under this Plan, together with analyzing the cost-benefit of any step towards the same.

The Liquidating Trustee shall have all powers, rights, and duties related or necessary thereto including, but not limited to: (i) objecting to Claims or seeking the subordination of one or more Claims, in either event if the Liquidating Trust is otherwise responsible for the payment of said Claims; (ii) entering into and granting settlements, releases, and compromises, for which approval from the Bankruptcy Court shall not be required; (iii) retaining professionals and advisors, including attorneys, accountants, and expert witnesses, as the Liquidating Trustee deems appropriate and advisable; (iv) making distributions pursuant to the Plan; (v) complying with all applicable laws; (vi) filing tax return information and other information required to be filed with any applicable Governmental Unit; and (vii) filing operating reports and other documents in the Bankruptcy Case.

6.6 <u>Powers of Liquidating Trustee</u>. The Liquidating Trustee shall have all powers necessary and advisable to effectuate the obligations and purposes of this Plan and of the Liquidating Trust. Without limitation, and for the avoidance of doubt only, the Liquidating Trustee shall have the power to: (i) file any suit, action, or legal proceeding, and to prosecute the same to finality or to compromise the same; (ii) retain such professionals, including attorneys, accountants, and expert witnesses, as he may find appropriate; (iii) cause the Liquidating Trust to incur liabilities in connection with its purposes and with his duties, and to pay the same from the Liquidating Trust Property; (vi) move for the entry of a final decree in the Bankruptcy Case; (v) make payments and distributions under this Plan; (vi) sell or transfer the Liquidating Trust Property in compliance with this Plan. Unless specifically controlled by a provision of this Plan, the Liquidating Trustee shall have broad discretion in managing the Liquidating Trust and the Liquidating Trust Property, and in fulfilling his duties and the purposes of the Liquidating Trust.

6.7 <u>Liabilities of Liquidating Trust</u>. In addition to its obligations under this Plan, the Liquidating Trust shall have liabilities after the Effective Date as otherwise provided for by law and incurred by the Liquidating Trust, including for counsel, the fees of the Liquidating Trustee, and such other liabilities as the Liquidating Trustee may agree to or may incur, subject to its defenses and rights against the same.

6.8 <u>Liabilities of Liquidating Trustee</u>. No recourse shall ever be had, directly or indirectly, against the Liquidating Trustee, in his individual capacity, by legal or equitable proceedings or otherwise, by virtue of any contract, agreement, promise, undertaking, covenant, instrument or other writing executed by the Liquidating Trustee for any authorized purpose in the administration of the Liquidating Trust, it being expressly understood and agreed that all such liabilities, whether in writing or otherwise, shall be enforceable, to the extent valid, only against, and shall be satisfied only by, the Liquidating Trust. Provided the Liquidating Trustee acts in good faith, he shall not personally be liable for any action or omission in the administration of the Liquidating Trust, and shall be indemnified by the Liquidating Trust against any and all claims, causes of action and liability, including all expenses and defense costs, associated with, and shall be held harmless by the Liquidating Trust against, each such action and omission, except to the extent that such action or omission constitutes gross negligence or willful misconduct or a violation of this Plan. As to all legal matters, the Liquidating Trustee shall be entitled to rely upon the advice and opinions of his counsel.

6.9 <u>Compensation of Liquidating Trustee</u>. The Liquidating Trustee shall be compensated on an hourly basis at the rate of up to $400.00 per hour, and shall be reimbursed for his reasonable expenses from the Liquidating Trust and from the Liquidating Trust Property.

6.10 <u>Execution of Liquidating Trust Documentation</u>. Promptly after the Effective Date, the necessary parties shall execute the Liquidating Trust Documentation and shall deliver the same to the Liquidating Trustee; *provided, however,* that the same shall not be a condition precedent to the creation of the Liquidating Trust or to the exercise of its powers under this Plan.

6.11 <u>Standing of the Liquidating Trust</u>. The Liquidating Trust shall be deemed an independent entity and shall have standing to sue and be sued in its own name in any court and to otherwise appear before any administrative body, tribunal, or other proceeding.

6.12 <u>Termination of Liquidating Trust</u>. The duties, responsibilities and powers of the Liquidating Trust and the Trust Advisory Board shall terminate after all causes of action transferred and assigned to the Liquidating Trust or involving the Liquidating Trust on behalf of the Liquidating Trust are fully resolved and the Liquidating Trust Property have been finally distributed in accordance with this Plan. The Liquidating Trust shall terminate no later than five years from the Effective Date. However, such date may be extended: (i) if the Liquidating Trustee and a majority of the Trust Advisory Board agree to extend it, and upon notice of the same filed in the Bankruptcy Court; or (ii) by order of the Bankruptcy Court.

6.13 <u>Books and Records</u>. The Liquidating Trustee shall keep or cause to be kept books and records detailing all receipts, disbursements and reserves in the administration of the Liquidating Trust, and such books and records shall be open to inspection at all reasonable times upon reasonable request of any holder of an Allowed Claim to be paid by the Liquidating Trust, subject to reimbursement or advance of reasonable expenses of the Liquidating Trust in connection therewith, unless requested by a member of the Trust Advisory Board. With respect to books and records of the Debtor and the Estate, the Liquidating Trustee may determine in their sole discretion which of the same to retain for purposes of litigation or other Liquidating Trust matters, and may, without liability to himself or to the Liquidating Trust, dispose of and destroy all such books and records, and all such documents, that he determines in his sole discretion to be without sufficient value to the Liquidating Trust to retain.

6.14    Trust Advisory Board.  The "Trust Advisory Board" shall consist of three (3) members.  One such member of the Trust Advisory Board shall be designated by BoA. The other two shall be solicited by the Liquidating Trustee via notifying all creditors of the same and polling the same for interest in membership of the Trust Advisory Board, whereupon the Liquidating Trustee shall use their reasonable discretion to select two members.  Upon the selection of the two members, the Liquidating Trustee shall file a notice in the Bankruptcy Case.

If less than three members are designated, due to lack of interest or otherwise, the Trust Advisory Board shall consist of such lesser number of members as have been designated.  In the event of disability, death, resignation, or other removal, the Liquidating Trustee shall have the exclusive right to designate a replacement for its designated representatives on the Trust Advisory Board. Similarly, in the event of disability, death, resignation, or other removal, BoA shall have the exclusive right to select a replacement for its designated representative.

If BoA nor any other creditor wish to be designated as Trust Advisory Board members, there shall be no Trust Advisory Board.

6.15    Compensation and Reimbursement of Trust Advisory Board.  The members of the Trust Advisory Board shall receive no compensation from the Liquidating Trust for their services.  The Liquidating Trust shall reimburse their reasonable travel and similar logistical expenses for attending to Trust Advisory Board meetings and business.

6.16    Privileged Communications.  From time to time, the Liquidating Trustee may find it appropriate or necessary to share information with the Trust Advisory Board, which information is otherwise privileged, including by the attorney-client privilege, and the Trust Advisory Board may from time to time request the same, when necessary to enable to the Trust Advisory Board to make any determination provided for by this Plan.  The Liquidating Trustee may share such information with the Trust Advisory Board without any prejudice to, waiver of, or loss of any privilege otherwise applicable to such information.  The Trust Advisory Board and its members shall hold any such information in confidence and shall not be subject to process, subpoena, or discovery for the same by any person.

6.17    Role of Trust Advisory Board.  The Trust Advisory Board shall have a role only with respect to the Liquidating Trust's prosecution and compromise of the Litigation Claims. The Trust Advisory Board shall advise the Liquidating Trustee and oversee, but not manage, the Liquidating Trust with respect to the Litigation Claims.  The Trust Advisory Board, after notice to the Liquidating Trustee and opportunity to be heard, may, by unanimous vote, veto any decision made by the Liquidating Trustee with respect to the prosecution, management, trial, and settlement and/or compromise of the Litigation Claims and direct an alternative course of action. The Trust Advisory Board shall be entitled to reasonably prompt information from the Liquidating Trustee concerning the Litigation Claims and shall be entitled to provide input to the Liquidating Trustee as to the management, trial, and settlement thereof.   As set forth in Section 6.16 above, the Trust Advisory Board shall share in the Liquidating Trust's attorney-client privilege, and the Liquidating Trustee shall not withhold any information from the Trust Advisory Board on the basis of attorney-client privilege.

6.18    Liabilities of Trust Advisory Board.  No recourse shall ever be had, directly or indirectly, against the members of the Trust Advisory Board, in their individual capacity, by

legal or equitable proceedings or otherwise, by virtue of any contract, agreement, promise, undertaking, covenant, instrument or other writing executed by the Trust Advisory Board for any authorized purpose in management of the Litigation Claims, it being expressly understood and agreed that all such liabilities, whether in writing or otherwise, shall be enforceable, to the extent valid, only against, and shall be satisfied only by, the Liquidating Trust. Provided the Trust Advisory Board's members act in good faith, they shall not personally be liable for any action or omission in the administration of the Trust Advisory Board, and shall be indemnified by the Liquidating Trust against any and all claims, causes of action and liability, including all expenses and defense costs, associated with, and shall be held harmless by the Liquidating Trust against, each such action and omission, except to the extent that such action or omission constitutes gross negligence or willful misconduct or a violation of this Plan. As to all legal matters, the members of the Trust Advisory Board shall be entitled to rely upon the advice and opinions of their counsel.

## ARTICLE VII.
## ACCEPTANCE OR REJECTION OF PLAN

7.1.    Impairment Controversies. If a controversy arises as to whether any Class is impaired under this Plan, such Class shall be treated as specified in this Plan unless the Bankruptcy Court shall determine such controversy differently upon motion of the party challenging the characterization of a particular Class under this Plan.

7.2.    Classes and Claims Entitled to Vote. Claims in Classes 3 and 5 are impaired under the Plan and are entitled to vote on the Plan, to the extent that a Claim in a Class is not the subject of a pending objection as to allowance, or the holder of any such objected-to Claim has obtained an order from the Bankruptcy Court permitting such holder to vote on the Plan. Class 6 is conclusively deemed to have rejected the Plan without the necessity of voting. Ballots for the acceptance or rejection of the Plan shall be mailed to holders of such impaired Classes only and to holders of such Claims within such Classes only.

7.3.    Class Acceptance Requirement. A Class of Claims shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims in such Class that have voted on the Plan.

7.4.    Cramdown. This section of the Plan shall constitute the request by the Plan Proponent, pursuant to section 1129(b) of the Bankruptcy Code, that the Bankruptcy Court confirm the Plan notwithstanding the fact that the requirements of section 1129(a)(8) may not be met.

## ARTICLE VIII.
## TREATMENT OF DISPUTED CLAIMS AND OBJECTIONS TO CLAIMS

8.1.    Standing to Object to Claims. In addition to all other parties that may otherwise have standing to object to Claims, the Liquidating Trust shall have specific standing to object to the allowance of said Claims.

8.2.    Objection Deadline. Any objection to a Claim when the Claim is not otherwise Allowed by this Plan must be filed by the Claims Objection Deadline or be forever barred and

waived. Any Claim that is not a Disputed Claim, Disallowed Claim, or that is not objected to by the Claims Objection Deadline shall be deemed to be an Allowed Claim of the type and priority asserted in the Claim. Provided that a claim objection is filed prior to the Claims Objection Deadline, such objection may be amended thereafter to assert any other applicable objection or grounds for objection, together with any other relief as otherwise appropriate. Unless arising from an Avoidance Action, any proof of Claim filed after the Effective Date shall be of no force and effect and need not be objected to. Any Disputed Claim may be litigated to Final Order. The Liquidating Trust may compromise and settle any Disputed Claim without the necessity of any further notice or approval of the Bankruptcy Court, and Bankruptcy Rule 9019 shall not apply to any settlement of a Disputed Claim after the Effective Date. Nothing in this Plan extends any Bar Date set in the Bankruptcy Case or grants any Creditor any greater rights with respect to a late filed Claim than such Creditor has.

8.3. <u>Creditor Response to Objection</u>. With respect to any objection to a Claim when such objection is filed after the Effective Date but otherwise in compliance with this Plan, the Creditor whose Claim was the subject of the objection must file with the Bankruptcy Court and serve a response to the objection upon the Liquidating Trust and the objecting party no later than the expiration of thirty (30) days from the date of service of any such objection. Failure to file and serve such a response within the thirty (30) days shall cause the Bankruptcy Court to enter a default judgment against the non-responding Creditor and thereby grant the relief requested in the Objection without further notice to such Creditor. Any such objection shall contain prominent negative notice language informing the objected-to creditor of the same.

8.4. <u>No Waiver of Right to Object</u>. Except as expressly provided in this Plan, nothing contained in the Disclosure Statement, this Plan, or the Confirmation Order shall waive, relinquish, release or impair the Liquidating Trust's or other appropriate party-in-interest's right to object to any Claim. A Claim that is specifically Allowed in this Plan shall not be subject to any objection and shall be conclusively Allowed in the Bankruptcy Case, except to the extent that such Claim is subsequently asserted in an amount, priority, or classification otherwise than that specifically Allowed in this Plan.

8.5. <u>Miscellaneous Provisions for Disputed Claims</u>. Nothing contained in this Plan, the Disclosure Statement, or Confirmation Order shall change, waive or alter any requirement under applicable law that the holder of a Disputed Claim must file a timely proof of Claim, and the holder of such Disputed Claim who is required to file a proof of Claim and fails to do so, shall receive no distribution through the Plan and the Claim shall be discharged, unless this Plan specifically and explicitly provides otherwise. The adjudication and liquidation of Disputed Claims is a determination and adjustment of the debtor/creditor relationship, and is therefore an exercise of the Bankruptcy Court's equitable power to which the legal right of trial by jury is inapplicable. The holder of any Disputed Claim shall not have a right to trial by jury before the Bankruptcy Court with respect to any such Claim, except with respect to any potential personal injury or wrongful death claim. Exclusive venue for any proceeding involving a Disputed Claim shall be in the Bankruptcy Court or District Court in the Northern District of Texas, Dallas Division, unless the Bankruptcy Court or District Court withdraw the reference, transfer a proceeding, or abstain. Disputed Claims shall each be determined separately, except as otherwise ordered by the Bankruptcy Court. The Liquidating Trust shall retain all rights of removal to federal court as to any proceeding involving a Disputed Claim.

8.6. <u>Allowance of Disputed Claims</u>. All Disputed Claims shall be liquidated and determined as follows:

8.6.1. <u>Application of Adversary Proceeding Rules</u>. Unless otherwise ordered by the Bankruptcy Court, the proceeding involving a Disputed Claim or any objection to a Disputed Claim shall be subject to Rule 9014 of the Bankruptcy Rules. However, any party may move the Bankruptcy Court to apply the Bankruptcy Rules applicable to adversary proceedings. The Liquidating Trust may, at its election, make and pursue any objection to a Claim in the form of an adversary proceeding.

8.6.2. <u>Scheduling Order</u>. Unless otherwise ordered by the Bankruptcy Court, or if the objection is pursued as an adversary proceeding, a scheduling order may be entered as to each objection to a Disputed Claim upon the filing of a response thereto by the holder thereof. The Liquidating Trust may tender a proposed scheduling order with each objection and include a request for a scheduling conference for the entry of a scheduling order.

8.6.3. <u>Mediation</u>. The Bankruptcy Court may order the parties to mediate in connection with any objection to a Disputed Claim. The Liquidating Trust may include a request for mediation in its objection, and request that the Court require mediation as part of the scheduling order.

8.6.4. <u>Substantial Consummation</u>. All distributions of any kind made to any of the holders of Allowed Claims after Substantial Consummation and any and all other actions taken under this Plan after Substantial Consummation shall not be subject to relief, reversal or modification by any court unless the implementation of the Confirmation Order is stayed by an order issued under the Bankruptcy Rules.

8.6.5 <u>Offsets</u>. The Liquidating Trust shall be vested with and retain all rights of offset or recoupment and all counterclaims against any holder of a Disputed Claim, unless specifically released in this Plan.

8.7 <u>Amendments to Claims; Claims Filed After the Confirmation Date</u>. Except as otherwise provided in the Plan, and subject to the Bar Date, a Claim may not be filed with the Bankruptcy Court or amended after the Confirmation Date without the prior authorization of the Bankruptcy Court. Except as otherwise provided in the Plan, any new or amended Claim filed with the Bankruptcy Court after the Confirmation Date shall be deemed disallowed in full and expunged without need for any action by the Liquidating Trust.

## ARTICLE IX
## EFFECTS OF PLAN CONFIRMATION

9.1 <u>No Discharge</u>. The Debtor is not granted a discharge under this Plan.

9.2 <u>Plan Injunction</u>. Effective immediately on the Effective Date, and without need for further order, document, action, or instrument, the Confirmation Order shall, and shall be deemed to, permanently enjoin all Persons from taking any of the following actions on account of any Claim: (i) commencing, conducting or continuing in any manner, directly or indirectly,

any suit, action or other proceeding of any kind against the Debtor, the Estate, or the Liquidating Trust or any of their property, with respect to any property to be distributed or transferred under the Plan or Claim that is subject to this Plan, including funds or reserves held or maintained by any of them pursuant to this Plan; (ii) enforcing, levying, attaching, collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against the Debtor, the Estate, or the Liquidating Trust or their property with respect to any property to be distributed or transferred under the Plan or Claim that is subject to this Plan, including funds or reserves held or maintained by any of them pursuant to this Plan; (iii) creating, perfecting or enforcing in any manner directly or indirectly, any lien, charge or encumbrance of any kind against the Debtor, the Estate, or the Liquidating Trust or their property, with respect to any property to be distributed or transferred under the Plan or Claim that is subject to this Plan, including funds or reserves held or maintained by any of them pursuant to this Plan; and (iv) proceeding in any manner in any place whatsoever against the Liquidating Trust or its property with respect to any property to be distributed or transferred under the Plan or Claim that is subject to this Plan, including funds or reserves held or maintained by any of them pursuant to this Plan in any way that does not conform to, or comply, or is inconsistent with, the provisions of this Plan; *provided, however*, that such injunction shall not preclude any party in interest from seeking to enforce or interpret the terms of the Plan through an action commenced in the Bankruptcy Court or other appropriate court, or from appealing the Confirmation Order.

9.3     No Liability for Solicitation or Participation.  Pursuant to section 1125(e) of the Bankruptcy Code, Persons that solicit acceptances or rejections of this Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, shall not be liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan.

9.4     General Release.  On the Effective Date, and without the need for further action, the Plan and Confirmation Order shall constitute a release, except of any obligations imposed by this Plan, by: the Debtor, the Estate, and the Liquidating Trust, any Creditor, and any Equity Interest holder (collectively, the "Releasing Parties"), on behalf of the Releasing Parties and all their predecessors, successors, parents, direct subsidiaries, indirect subsidiaries, affiliates, assigns, heirs, agents, transferees, directors, officers, employees, and attorneys, of any and all actions, causes of action (including Chapter 5 avoidance actions), claims, suits, debts, damages, judgments, liabilities, and demands whatsoever, whether matured or unmatured, whether at law or in equity, whether before a local, state, or federal court, state or federal administrative agency or commission, regardless of location and whether now known or unknown, liquidated or unliquidated, that the Releasing Parties now have or may have had, or thereafter claim to have, on behalf of themselves, or any other person or entity, as of the Effective Date and only if related to the Bankruptcy Case or a Claim, against Munsch Hardt Kopf & Harr, P.C., its attorneys, employees, officers, agents, and shareholders from any alleged liability of any of the foregoing for an action or omission taken in the Bankruptcy Case, or with respect to a Claim in the Bankruptcy Case, or with respect to this Plan, except for any such action or omission that constitutes gross negligence, an intentional tort, breach of fiduciary duty (except simple negligence), or the disallowance or disgorgement of any fees or expenses.  For the avoidance of doubt, nothing herein releases any such person from any liability: (i) for any independent claim

or cause of action that would not be property of the Estate; or (ii) the requirements applicable to the allowance of a Professional Claim.

9.5 <u>Exculpation</u>. On the Effective Date, and without the need for further action, the Plan and Confirmation Order shall constitute a release and discharge of all actions, causes of action, claims, suits, debts, damages, judgments, liabilities, and demands whatsoever, whether matured or unmatured, whether at law or in equity, whether before a local, state, or federal court, state or federal administrative agency or commission, regardless of location and whether now known or unknown, liquidated or unliquidated, that any Person may have or be able to assert against the following solely for any actions or inactions taken by the following in, or arising against the following as a result of, the Bankruptcy Case, the Disclosure Statement, and the Plan, including with respect to the negotiation, execution, and delivery of any document or instrument in connection with the Plan Munsch Hardt Kopf & Harr, P.C., its attorneys, employees, officers, agents, and shareholders; *provided, however,* that nothing contained in this Plan or the Confirmation Order shall relieve any of the foregoing from the normal requirements applicable to the allowance of an Administrative Claim or Professional Claim if approval from the Bankruptcy Court for such allowance is required, and no defenses to said allowance are waived or released.

**ARTICLE X**
**<u>CONDITIONS PRECEDENT</u>**

10.1. <u>Conditions Precedent to Confirmation and Effectiveness of Plan</u>. The Plan shall not become effective until the following conditions shall have been satisfied: (i) the Confirmation Order shall have been entered, in form and substance acceptable to the Plan Proponent; (ii) on the fifteenth (15th) day after the Confirmation Date, no notice of appeal of the Confirmation Order shall have been filed or, if filed, no order staying the Confirmation Order shall have been entered by such date; (iii) all other specific condition precedents contained in this Plan shall have been satisfied; and (iv) a notice of the Effective Date shall have been filed by the Plan Proponent in the Bankruptcy Case.

10.2. <u>Non-Occurrence of the Effective Date</u>. If the Plan is confirmed but the Effective Date does not occur by October 17, 2019, unless such date is extended by the Debtor: (i) the Confirmation Order shall be deemed vacated; (ii) all bar dates and deadlines established by the Plan or the Confirmation Order shall be deemed vacated; (iii) the Bankruptcy Case will continue as if confirmation of this Plan had not occurred; and (iv) this Plan will be of no further force and effect, with the result that the Debtor and other parties in interest will be returned to the same position as if confirmation had not occurred. The failure of the Effective Date to occur shall not affect the validity of any order entered in the Bankruptcy Case other than the Confirmation Order or any order based thereon.

10.3. <u>Notice of the Effective Date</u>. On or before three (3) Business Days after occurrence of the Effective Date, the Plan Proponent shall mail to all Persons served with a copy of the Disclosure Statement a notice that informs such Persons of: (i) the occurrence of the Effective Date; (ii) the deadlines established under this Plan for the filing of Administrative Claims, Professional Claims, objections to Claims, and any other pertinent deadlines; (iii) the procedures for requesting notice; (iv) the procedures for changing an address of record; and (v) such other matters as they deem to be appropriate.

10.4. <u>Modification of this Plan</u>. The Plan Proponent may alter, amend or modify this Plan under section 1127 of the Bankruptcy Code or as otherwise permitted by applicable law at any time prior to the Confirmation Date. After the Confirmation Date and prior to the Substantial Consummation of this Plan, the Plan Proponent, the Liquidating Trust, or any party in interest in the Bankruptcy Case may, so long as the treatment of holders of Claims under this Plan and so long as the protections under this Plan are not materially adversely affected, institute proceedings in the Bankruptcy Court to remedy any defect or omission or to reconcile any inconsistencies in this Plan, the Disclosure Statement or the Confirmation Order, and any other matters as may be necessary to carry out the purposes and effects of this Plan.

10.5. <u>Revocation or Withdrawal of this Plan</u>. The Plan Proponent reserves the right to revoke or withdraw this Plan at any time prior to the Confirmation Date. If the Plan Proponent revokes or withdraws this Plan prior to the Confirmation Date, this Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other Person or to prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor.

## ARTICLE XI
## RETENTION OF JURISDICTION AND CLAIMS

11.1. <u>Jurisdiction of Bankruptcy Court</u>. Following the Effective Date, and notwithstanding the entry of the Confirmation Order, the Bankruptcy Court (including, as appropriate, any District Court with jurisdiction over the Bankruptcy Court) shall retain jurisdiction of the Bankruptcy Case and all matters arising in, or related to, the Bankruptcy Case to the fullest extent permitted by law, including jurisdiction to:

11.1.1. To hear and determine motions, applications, adversary proceedings, and contested matters pending or commenced after the Effective Date;

11.1.2. To hear and determine objections (whether filed before or after the Effective Date) to, or requests for estimation of, any Claim, and to enter any order requiring the filing of proof of any Claim before a particular date;

11.1.3. To ensure that distributions to holders of Allowed Claims are accomplished as provided in the Plan;

11.1.4. To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

11.1.5. To construe and to take any action to enforce this Plan and the Confirmation Order;

11.1.6. To issue such orders as may be necessary for the implementation, execution and consummation of this Plan, including the enforcement of any discharge, release, and/or injunction in this Plan, and to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan and the Confirmation Order;

11.1.7. To hear and determine any applications to modify this Plan, to cure any defect or omission or to reconcile any inconsistency in this Plan, the Disclosure Statement or in any order of the Bankruptcy Court including, without limitation, the Confirmation Order;

11.1.8. To hear and determine all applications for Administrative Claims;

11.1.9. To hear and determine other issues presented or arising under this Plan, including disputes among holders of Claims and arising under agreements, documents or instruments executed in connection with this Plan;

11.1.10. To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

11.1.11. To hear and determine any other matters related hereto and not inconsistent with Chapter 11 of the Bankruptcy Code;

11.1.12 To hear, authorize, and order the sale, free and clear of liens, claims, interests, and encumbrances, of any property, in the event the Liquidating Trust finds it necessary or appropriate to seek an order authorizing the same.

11.1.13. To enter the Final Decree upon proper request;

11.1.14. To command and enjoin any Creditor or Person to comply with the transfer and vesting of property of the Debtor and the Estate in the Liquidating Trust free and clear of liens, claims, interests, and encumbrances, as provided for in this Plan, and to command any Creditor or Person to release any lien or security interest required to be released or released by this Plan, or to order that any other Person may due to the same with the same full force and effect;

11.1.15. To hear and determine any action concerning the recovery and liquidation of assets, wherever located, including without limitation litigation to liquidate and recover assets that consist of claims, rights and causes of action against third parties and actions seeking declaratory relief with respect to issues relating to or affecting assets; and to hear and determine any action concerning the determination of taxes, tax refunds, tax attributes, and tax benefits and similar or related matters with respect to the Debtor, the Estate, or the Liquidating Trust, including, without limitation, matters concerning federal, state, local and other taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code.

11.2. _Failure of Bankruptcy Court to Exercise Jurisdiction_. If the Bankruptcy Court abstains from exercising or declines to exercise jurisdiction, or is otherwise without jurisdiction, over any matter arising under, arising in or related to the Bankruptcy Case, including with respect to the matters set forth above in Plan, this Article shall not prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such subject matter.

11.3.  <u>No Creation of Jurisdiction</u>.  This Plan does not create jurisdiction in the Bankruptcy Court but only retains the Bankruptcy Court's jurisdiction as it otherwise exists.  For the avoidance of doubt, where the Bankruptcy Court has no jurisdiction, or has lost jurisdiction through abstention, remand, or withdrawal of the reference, this Plan does not purport to create or reinstate said jurisdiction; *provided, however*, that this Plan, while not creating or reinstating such jurisdiction, does not prejudice or limit the ability of the Bankruptcy Court to otherwise exercise such jurisdiction as may otherwise be conferred or reinstated.

11.4.  <u>Retention and Preservation of General Rights</u>.  Notwithstanding the confirmation of the Plan and the entry of the Confirmation Order, and notwithstanding any principle of *res judicata* or otherwise, and unless specifically and explicitly released, waived, compromised, or otherwise treated in this Plan, the Debtor and the Estate retain any and all rights, property, and interests, all of which are transferred under this Plan to the Liquidating Trust, regardless of whether they are scheduled, filed, or asserted prior to the Confirmation Hearing, including, without limitation, all: (i) defenses to Claims; (ii) affirmative defenses to Claims; (iii) setoffs and recoupments against any Claim, Creditor, or other person; (iv) rights to turnover, accounting contribution, indemnification, or reimbursement against any Creditor or other person; (v) rights under any loan document modified by this Plan, but only as so modified; (vi) rights to any tax refund; (vii) Avoidance Actions; and (viii) claims and causes of action against any Creditor or person whatsoever, including for affirmative relief and to reduce any liability.

11.5  <u>Retention and Preservation of Specific Rights</u>.  Without limiting the effectiveness or generality of the foregoing, and out of an abundance of caution, the Debtor and the Estate specifically reserve and retain the following claims and causes of action, to be transferred to the Liquidating Trust as otherwise provided for in this Plan:

(i)  the Litigation Claims;

(ii)  all Avoidance Actions;

(iii)  enforcing the terms of this Plan as against the Subsidiaries, including as to the transfer of the Subsidiary Assets to the Liquidating Trust;

(iv)  all claims made and all potential claims that may be made by the Debtor against any present, former, or future insurance carrier or provider or policy;

(v)  claims, causes of action, lawsuits, and litigation commenced by the Debtor at any time prior to the Confirmation Hearing, whether in the Bankruptcy Court or otherwise;

(vi)  all rights against any holder of taxes, whether for past, present, or future taxes, including any right for purposes of future valuations, assessments, and taxes, arising under or related to section 505 of the Bankruptcy Code.

## ARTICLE XII
## MISCELLANEOUS PROVISIONS

12.1.    <u>Payment of Statutory Fees</u>.  All fees payable pursuant to section 1930 of Title 28 of the United States Code arising prior to the Effective Date, shall be timely paid by the Debtor or by the Liquidating Trust, subject to the rights of the Debtor and Liquidating Trust to contest the same.

12.2.    <u>Exercise of Liens</u>.  Any lien preserved in this Plan shall, when permitted to be exercised by this Plan and applicable law, be exercised, enforced, and foreclosed in full and strict conformity with all applicable non-bankruptcy law and agreements, except to the extent specifically modified or preempted in this Plan.

12.3.    <u>No Admissions</u>.  Notwithstanding anything herein to the contrary, nothing contained in this Plan shall be deemed an admission by the Plan Proponent with respect to any matter set forth herein including, without limitation, liability of any person on any Claim or the propriety of any classification of any Claim.

12.4.    <u>Plan Controls</u>. To the extent there is an inconsistency or ambiguity between any term or provision contained in the Disclosure Statement and the Plan, the terms and provisions of the Plan shall control.

12.5.    <u>Governing Law</u>.  Except to the extent the Bankruptcy Code, the Bankruptcy Rules or other federal or state laws are applicable, or any prepetition contract provides for the application of the law of a different state, the laws of the State of Texas shall govern the construction, implementation and enforcement of this Plan and all rights and obligations arising under this Plan, without giving effect to the principles of conflicts of law.

12.6.    <u>Substantial Consummation of Plan</u>.  The Plan shall be deemed to be substantially consummated upon the date of Substantial Consummation.

12.7.    <u>Successors and Assigns</u>.  The rights, benefits and obligations of any Person named or referred to in this Plan will be binding upon, and will inure to the benefit of, the heir, executor, administrator, representative, successor, or assign of such Person.

12.8.    <u>Severability</u>.  Should the Bankruptcy Court determine, on or prior to the Confirmation Date, that any provision of this Plan is either illegal or unenforceable on its face or illegal or unenforceable as applied to any Claim or Person, the Plan Proponent may, in their discretion, alter, delete, or modify such provision to make it valid and enforceable to the maximum extent practicable consistent with the original purpose of such provision. Notwithstanding any such determination, interpretation, or alteration, the remainder of the terms and provisions of this Plan shall remain in full force and effect, provided that the Bankruptcy Court otherwise confirms the Plan.

12.9.    <u>Notices and Distributions</u>.  On and after the Effective Date, all notices, requests and distributions to a holder of a Claim shall be sent to the last known address of: (i) the holder or its attorney of record as reflected in the holder's proof of Claim or Administrative Claim filed by or on behalf of such holder; or (ii) if there is no such evidence of a last known address, to the

last known address of the holder according to the books and records of the Debtor. Any holder of a Claim may designate another address for the purposes of this section by providing the Liquidating Trust written notice of such address, which notice will be effective upon receipt by the Liquidating Trust as otherwise appropriate.

12.10. <u>Unclaimed Property</u>. If any property to be distributed on account of this Plan remains unclaimed for a period of one (1) year after it has been delivered (or delivery has been attempted) or has otherwise been made available, such unclaimed property shall be forfeited by the Person entitled to receive the property and the unclaimed property and the right to receive it shall revert to and vest in the Liquidating Trust.

12.11. <u>Binding Effect</u>. The Plan shall be binding on and inure to the benefit of the holders of Claims and Equity Interests (whether or not they have accepted the Plan) and their respective personal representatives, successors and assigns as provided for by the Bankruptcy Code.

12.12. <u>Withholding and Reporting</u>. In connection with this Plan and all instruments issued in connection therewith and distributions thereon, the Liquidating Trust shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority and all distributions hereunder shall, to the extent applicable, be subject to any such withholding and reporting requirements. Notwithstanding anything herein to the contrary, in calculating and making the payments due to Allowed Claims hereunder, the Liquidating Trust shall be authorized, but not required, to deduct from such payments any necessary withholding amount.

12.13. <u>Other Documents and Actions</u>. The Liquidating Trust, and any Creditor, may execute such documents and take such other action as is reasonable, necessary, or appropriate to effectuate the transactions provided for in this Plan, *provided, however,* that no such document or action shall prejudice the right or any Person under this Plan except by agreement between the Liquidating Trust and such Person.

## ARTICLE XIII
## <u>CONFIRMATION REQUEST</u>

The Plan Proponent hereby requests confirmation of this Plan pursuant to section 1129(a) of the Bankruptcy Code or, in the event that this Plan is not accepted by each of those Classes of Claims entitled to vote, section 1129(b) of the Bankruptcy Code.

**DATED: June 17, 2019.**

**MUNSCH HARDT KOPF & HARR, P.C.**

By: ___/s/ Thomas Berghman_____
     Davor Rukavina, Esq.
     Texas Bar No. 24030781
     Thomas D. Berghman, Esq.
     Texas Bar No. 24082683
     3800 Ross Tower
     500 North Akard Street
     Dallas, Texas 75201-6659
     Telephone: (214) 855-7500
     Facsimile: (214) 855-7584

**ATTORNEYS FOR**
**THE DEBTOR-IN-POSSESSION**

Exhibit "A" to Liquidating Plan

| | | 5/13/2019 | | | |
|---|---|---|---|---|---|
| **Co.** | **GD** | **GTOX** | **ATL** | **RHL** | **GG** |
| Gulfstream Diagnostics | | 2,223,810 | (1,155,466) | (244,808) | (1,670,436) |

Exhibit "B" to Plan

| | GD | GTOX | ATL | RHL | GG | TOTAL |
|---|---|---|---|---|---|---|
| **Cash / Distributions** | $ 269,329 | $ 250,000 | $ - | $ - | $ - | $ 519,329 |
| | | | | | | |
| **Accounts Receivable - Trade** | | | | | | |
| Gross | $ - | $ - | $ 949,158 | $ 1,878,418 | $ 1,665,088 | $ 4,492,665 |
| Allowance | $ - | $ - | $ (649,590) | $ (1,745,073) | $ (1,635,661) | $ (4,030,325) |
| Estimated Collection Cost | $ - | $ - | $ (89,870) | $ (40,003) | $ (8,828) | $ (138,702) |
| **Accounts Receivable - Trade, net** | $ - | $ - | $ 209,698 | $ 93,341 | $ 20,599 | $ 323,638 |
| | | | | | | |
| **Accounts Receivable - Other** | | | | | | |
| AIT, gross | $ 467,098 | $ - | $ - | $ - | $ - | $ 467,098 |
| AIT Allowance (50%) | $ (233,549) | | | | | $ (233,549) |
| BCBS Paid to Patient | $ - | $ - | $ - | $ - | $ - | $ - |
| Chapter 5 | $ 50,000 | $ - | $ - | $ - | $ - | $ 50,000 |
| **Accounts Receivable - Other, net** | $ 283,549 | $ - | $ - | $ - | $ - | $ 283,549 |
| | | | | | | |
| **Property and Equipment, net** | | | | | | |
| Computer Equipment | $ 49,705 | $ - | $ - | $ - | $ - | $ 49,705 |
| Computer Software | $ - | $ - | $ - | $ - | $ - | $ - |
| Furniture & Fixtures | $ 84,311 | $ - | $ - | $ 11,396 | $ - | $ 95,707 |
| Lab Equipment | $ 213,175 | $ - | $ - | $ 18,746 | $ 35,218 | $ 267,140 |
| PPE FMV Allowance | $ (92,609) | $ - | $ - | $ (10,385) | $ (8,805) | $ (111,798) |
| **Total Property and Equipment, net** | $ 254,582 | $ - | $ - | $ 19,758 | $ 26,414 | $ 300,753 |
| | | | | | | |
| **TOTAL ASSETS AVAILABLE** | $ 523,911 | $ 250,000 | $ 209,698 | $ 113,099 | $ 47,013 | $ 1,427,270 |

**NOTES:**
**GD Cash - constitutes cash collateral of Dallas County and BoA**
**GTOX Cash - settlement funds due to GTOX from third party on or before June 24, 2019 (approximate amount)**
**Chapter 5 - gross estimate - no investigation has been conducted by the Debtor**
**BCBS Paid to Patient - unclear value**